May 14, 2007

TO ALL INTERESTED PARTIES:

          Re:    Office Gallery at Bridgewater LLC
                 Case No. 04-49679

                 Daniel Straffi, Trustee vs. PNC Bank, et al.
                 Adversary No. 06-3082

                 Defendant's Motion for Partial Summary
                 Judgment - Document #6

Counselors:

On May 7, 2007, the Court heard oral argument on a Motion for Partial Summary Judgment by Defendants Office Gallery at Mt. Laurel, Office Gallery at Springfield, Leonard Knauer, Gloria Bayes and Joan Heller ("Defendants"). The Defendants asked that all counts against them be dismissed. The Court considered the Trustee's opposition as well as the Defendants' reply. PNC did not oppose the motion, but filed a response stating that to the extent the Defendants prevail on their motion, PNC is also entitled to summary judgment and should be included in any order. This letter opinion represents the Court's resolution of the partial summary judgment

Trustee's complaint contains three counts: Count One alleges violation of 11 U.S.C. §

548(a)(1)(A) and (B); Count Two alleges violation of 11 U.S.C. § 544(b) and N.J.S.A. § 25:2-25(a) and (b)(2); and Count Three alleges violation of 11 U.S.C. § 547(b). The court will consider each count separately.

But first, the Court must consider whether summary judgment is appropriate at this juncture. In his reply brief, filed March 23rd, the Trustee suggests that summary judgment is premature because no answer had been filed, no pre-trial scheduling order was in place, and discovery was not complete. Since that time, the Defendants have filed an answer and the parties submitted a pre-trial scheduling order which was entered on April 11, 2007. As for discovery being incomplete, there is no indication that the Trustee has sought any discovery (beyond two 2004 depositions) despite the fact that this complaint was filed on December 14, 2006. As noted by the Second Circuit, a party wanting more time for discovery should seek an adjournment from the moving party rather than just asserting it as an affirmative defense to summary judgment. Burlington Coat Factory Warehouse Corp. v. Esprit De Corp., 769 F.2d 919 (2d Cir. 1985). Further, a party invoking Rule 56(f) must specify "what particular information is sought; how, if uncovered, it would preclude summary judgment; and why it has not previously been obtained." Pastore v. Bell Telephone Co. of Pa., 24 F.3d 508 (3d Cir. 1994). Since the Trustee did none of that, the Court will overrule any objection to summary judgment on the basis of incomplete discovery.

Summary judgment is not lightly granted. The Supreme Court has established that "summary judgment is appropriate only when there is no genuine issue of material fact and when the moving party is entitled to judgment as a matter of law. Fed. R. Civ. Pro. 56(c). The party moving for summary judgment has the burden of establishing the nonexistence of any "genuine issues of material fact." Celotex Corp. v. Catrett, 477 U.S. 317 (1986). The Third Circuit has stated

that whenever there is even the "slightest doubt regarding the facts of a case, summary judgment should not be granted." Tomalewski v. State Farm Life Ins, Co., 494 F.2d 882, 884 (3d Cir. 1984).

Three of the Defendants had a previous lending arrangement with United National Bank ("UNB"), a predecessor in interest to PNC. In August 1998, Office Gallery at Springfield ("Springfield") borrowed $400,000. When Springfield ceased operation in July 2002, Princeton Office Gallery, Inc. ("Princeton"), a related entity, began making the payment owed by Springfield. Springfield's obligation to UNB was guaranteed by Gloria Bayes, Joan Heller, and Leonard Knauer, as members of Springfield.

In January 2001, Office Gallery at Mt. Laurel, LLC ("Mt. Laurel") borrowed $341,000 from UNB. That obligation was also guaranteed by Gloria Bayes, Joan Heller, and Leonard Knauer, as members of Mt. Laurel.

In October 2001, the Debtor borrowed $200,000 from United Trust Bank, a predecessor in interest to PNC. That obligation was also guaranteed by Gloria Bayes, Joan Heller, and Leonard Knauer, as members of the Debtor. Additionally, the Debtor granted United Trust Bank a blanket security interest in all of its collateral.

According to Leonard Knauer, he sought to obtain new financing in 2004 and entered into loan negotiations with Yardville National Bank ("YNB") on behalf of the three entities. YNB and the Debtor, Mt. Laurel, Princeton, Gloria Bayes, Joan Heller, and Leonard Knauer executed a Promissory Note dated July 9, 2004, in the principal amount of $500,000. As part of that transaction, the Debtor granted YNB a blanket security interest in all of its collateral.

On July 14, 2004, YNB disbursed the loan proceeds and deposited $465,000 directly into

3

the Debtor's business checking account.  It placed the balance of the loan proceeds ($35,000) into a certificate of deposit in the Debtor's name.  After the funds were deposited, the Debtor authorized wire transfers of funds from its checking account to PNC in payment of several loans.  PNC received the following amounts from the Debtor: 1) $1,637.20 and $64,878.11 on account of the Springfield loan; 2) $205,468.86 and $37,315.65 on account of the Mt. Laurel loan; and 3) $147,801.82 on account of the Debtor loan.

The Debtor filed a Chapter 7 bankruptcy petition on December 21, 2004.  The Chapter 7 Trustee filed the complaint at issue on December 14, 2006.

Count Three of the Complaint is based on 11 U.S.C. § 547(b).  To prevail under that section the Trustee must establish that the transfer was:

> (1) to or for the benefit of a creditor;
>
> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
>
> (3) made while the debtor was insolvent;
>
> (4) made -
>
>> (A) on or within the 90 days before the date of the filing of the petition; or
>>
>> (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
>
> (5) that enables a creditor to receive more than such creditor would receive if -
>
>> (A) the case were a case under Chapter 7 of this title;
>>
>> (B) the transfer had not been made; and
>>
>> (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b).  The Trustee cannot establish several of the required elements.

First, the transfer at issue was not made within 90 days of the filing.  The undisputed facts establish that the transfer occurred on July 14, 2004, when YNB wired the majority of the $500,000

loan proceeds to PNC in repayment of several loans from PNC[1]. The bankruptcy petition was filed on December 21, 2004. So, the only way that § 547(b) could apply is if the transfer was to an insider. PNC is not an insider of the Debtor. Presumably in recognition of this problem, Count Three does not appear to seek to recovery from PNC but rather from Leonard Knauer, Gloria Bayes and Joan Heller. *Complaint* at ¶ 41 ("As insiders, said defendants, Leonard Knauer, Gloria Bayes and Joan Heller received voidable preferences under 11 U.S.C. § 547(b) when they caused monies to be paid by the Debtor to defendant PNC Bank which benefitted them as guarantors.") Accepting for the moment without finding that those three defendants are insiders of the Debtor, the Trustee still has not established that they are creditors. Section 547(b)(1) clearly requires that the transfer be "to or for the benefit of a creditor." None of those three defendants is listed as a creditor in the Debtor's schedules or appears to have asserted a claim against the Debtor.

Trustee also has trouble satisfying § 547(b)(2), which requires that the transfer be "for or on account of an antecedent debt owed **by the debtor".** As the Trustee himself notes, the Debtor was not liable under the Springfield or Mt. Laurel Notes. At best, the Trustee can only satisfy that element with regard to the Debtor's Note.

On a more basic level, the Movants contend that the Debtor did not even possess an interest in the property transferred. In addition to the five elements of § 547(b), the trustee, as a threshold matter, must establish that the payment in question was a "transfer of an interest of the debtor in property." Maggio v. Manufacturers Hanover Trust Co. (In re Oliver's Stores, Inc.), 112 B.R. 671 (Bankr. D.N.J. 1989), *aff'd*, 1990 WL 102353 (D.N.J. June 6, 1990). Movants contend that the

---

[1]Arguably, the relevant transfer occurred on July 9, 2004, when the Debtor granted PNC a security interest, but the precise date is not dispositive because both dates were more than 90 days prior to the bankruptcy filing.

payment to PNC was not property of the Debtor based on the earmarking doctrine. The earmarking doctrine is an equitable doctrine that provides that funds are "earmarked" for a creditor where a new lender makes a loan to enable a debtor to pay the specific debt. It is generally considered to be a "judicially-created doctrine said to apply when a new creditor pays a debtor's existing debt to an old creditor." In re Moses, 256 B.R. 641, 645 (10th Cir. BAP 2000). The rationale behind the doctrine is that the funds paid by the new creditor do not become part of debtor's estate where the transfer merely substitutes one creditor for another. Accordingly, the transfer is not considered a property interest of the debtor. *See e.g.*, In re Lee, 339 B.R. 165 (E.D. Mich. 2006); In re Grabill Corp., 135 B.R. 101 (Bankr.. N.D. Ill. 1991).

The doctrine has been highly criticized outside the co-debtor context as being contrary to the purpose of § 547. *See, e.g.,* In re Moses, 256 B.R. 641, 645 (10th Cir. BAP 2000)(citing cases); Harry M. Flechtner, PREFERENCES, POST-PETITION TRANSFERS, AND TRANSACTIONS INVOLVING A DEBTOR'S DOWNSTREAM AFFILIATE, 5 Bankr.Dev. J. 1, 14-15 & 16 n. 55 (1987) ("the oft-repeated assertion that earmarking prevents the transferred property from becoming property of the debtor represents a misguided attempt to create a statutory basis for the judge-made earmarking doctrine, and should be rejected."); see also Collier, ¶ 541.11 at 541-59. It is also unclear to what extent the Third Circuit Court of Appeals has excepted the doctrine. *See*, In re Buffalo Molded Plastics, Inc., 344 B.R. 394, 399 (Bankr. W.D. Pa. 2006) ("The parties did not present, nor did the Court's research reveal, any case law decided by the United States Court of Appeal for the Third Circuit, regarding extension of the earmarking doctrine beyond guarantor cases.")

However, it is likely that the Third Circuit would recognize the application of the doctrine in this instance because Leonard Knauer, Gloria Bayes and Joan Heller are guarantors of the notes

and thus co-debtors. Of course, the application of the doctrine in this situation is complicated by the fact that there were 6 parties named on the Note and two of the other entities, Office Gallery at Mt. Laurel and Princeton Office Gallery, are not co-debtors of this Debtor on the Debtor's Note. Nonetheless, the existence of the guarantees brings this matter closer to the original purpose of the earmarking doctrine, and therefore the Court finds its application to be appropriate. In re Kerst, 347 B.R. 418, 422 (Bankr. D. Colo. 2006)("Earmarking is not provided for in the Bankruptcy Code but is inherently necessary to protect a co-debtor.").

The courts that recognize the earmarking doctrine have established three requirements for its applicability:

> (1) existence of an agreement between the new lender and the debtor that the new funds will be used to pay a specified antecedent debt,
>
> (2) performance of that agreement according to its terms, and
>
> (3) the transaction viewed as a whole (including the transfer in of the new funds and transfer out to the old creditor) does not result in any diminution of the estate.

*See, e.g.,* In re Bohlen Enterprises, Ltd., 859 F.2d 561, 566 (8th Cir.1988). On the first requirement, the Trustee argues that there is no agreement between the new lender and the debtor because the loan documents do not specify that the funds will be used to repay the loans from PNC. The argument is refuted by both the evidence before the Court and common sense. First, the "Disbursement Request and Authorization" document expressly provides: 'The specific purpose of this loan is: Pay off and consolidate existing company obligations." That stated purpose is not undercut by the preceding provision that provides that the primary purpose of the loan is to "Acquire Equipment for Business or Commercial Purposes." The section just quoted is preprinted on the form and the appropriate box is simply checked. Given how poorly the form is worded, the Court cannot give

much credence to which box was checked. The only other box that would even arguably be applicable in this situation is the one for "Business, Agricultural and All Other". Yet it is not at all clear from the form what the distinction is between business and commercial. By contrast, the "specific purpose" section of the form had the answer typed in, so it is unique to this loan and therefore much more meaningful in terms of construing the parties' intent. That conclusion is supported by the general contract interpretation principal that specific terms control over more general terms. Assisted Living Assocs. of Moorestown, LLC v. Moorestown Twonship, 31 F. Supp. 2d 389 (D.N.J. 1998).

Admittedly, even the specific purpose section does not state that the obligations that will be paid off are those owed to PNC. Yet it defies commercial sense for Yardville National Bank to loan half a million dollars to the Office Gallery Defendants so that they could pay off unsecured debt. It is simply inconceivable that YNB would agree to take a secondary position to PNC's security interest so the Debtor could pay down its unsecured debt. Equally inconceivable is the Trustee's suggestion that the half million dollar loan was intended to enable the Debtor to purchase equipment. At the time the Debtor filed for bankruptcy, its schedules listed only $7,000 in equipment. It strains credulity to think that a sophisticated commercial player such as YNB would agree to finance the purchase of more than 71 times the amount of existing equipment when the equipment would arguably be subject to PNC's pre-existing blanket lien.

Next, the fact that PNC is not mentioned by name in the loan documents is not dispositive. Courts have recognized the earmarking doctrine based on oral agreements. *See, e.g.,* Maggio v. Manufacturers Hanover Trust Co. (In re Oliver's Stores, Inc.), 112 B.R. 671 (Bankr. D.N.J. 1989),

8

*aff'd*, 1990 WL 102353 (D.N.J. June 6, 1990). Here, the Court has the uncontradicted certification of Leonard Knauer stating that all of the parties involved in the execution of the Yardville Note understood and agreed that the loan proceeds would be used to satisfy the Springfield Note, the Mt. Laurel Note, and the Debtor Note. *Knauer Cert.* ¶ 9. Overall, the Court finds that the undisputed evidence compels the conclusion that there was an agreement to pay the debt of PNC with the proceeds of the loan from YNB.

The next requirement of the earmarking doctrine is also satisfied because the undisputed facts show that on the same day the loan proceeds were disbursed, the Debtor authorized the majority of them to be wired to PNC.

The final requirement is that the transaction, when viewed as a whole, does not diminish the estate. In other words, courts should consider "whether the transfer diminished or depleted the debtor's assets generally available to unsecured creditors." Maggio v. Manufacturers Hanover Trust Co. (In re Oliver's Stores, Inc.), 112 B.R. 671 (Bankr. D.N.J. 1989), *aff'd*, 1990 WL 102353 (D.N.J. June 6, 1990). The Trustee argues that the estate was diminished because it went from having a blanket lien in favor of PNC to support a $147,000 debt to a blanket lien in favor of YNB to support a $500,000 debt. That would be a persuasive argument if PNC were not so drastically undersecured to begin with. As of the date of filing, the Debtor's schedules show a total of $9,000 in assets: $2,000 in bank accounts and $7,000 in equipment. The loan with YNB occurred only 5 months earlier, so the total asset picture was likely quite similar. In fact, the Statement of Financial Affairs gives no indication that significant assets were disposed of in the intervening 5 months. So at the time the Debtor entered into the loan with YNB there were no assets generally available to unsecured creditors. As a practical matter, from an unsecured creditors point of view there is no

difference between a lien for $147,000 and a lien for $500,000: Either way, there were no unencumbered assets to pay unsecureds. Therefore, the Court finds that all three elements for the application of the earmarking doctrine are present.

Additionally, the Trustee contends that the earmarking defense is only valid when the assets in question were never within the control of the debtor. This Court does not subscribe to the theory that the earmarking doctrine should be limited to situations in which the new creditor pays the old creditor directly and the funds are never in the possession of the debtor. *See, e.g.,* In re Kelton Motors, Inc., 153 B.R. 417 (Bankr. D. Vt. 1993). The Court finds the more pragmatic approach of other courts to be the better reasoned position. *See, e.g.,* In re Superior Stamp & Coin Co., Inc., 223 F.3d 1004, 1009 (9th Cir. 2000); see also 4 Collier on Bankruptcy, ¶ 547.25 at 547 ("The rule is the same regardless of whether the proceeds of the loan are transferred directly by the lender to the creditor or are paid to the debtor with the understanding that they will be paid to the creditor in satisfaction of his claim, so long as such proceeds are clearly 'earmarked.' ").

In conclusion, the Court finds that the Trustee has not meet his burden of establishing a preference under § 547(b) because he cannot fully establish 2 of the 5 elements. In addition, the movants have properly established the earmarking defense. Accordingly, summary judgment will be granted in favor of the movants on Count Three. To the extent that the Trustee intended to include PNC in Count Three, that count will be dismissed against PNC because PNC is not an insider and the transfer was more than 90 days before the filing.

Count Two is premised on § 544 of the Bankruptcy Code and New Jersey's Uniform Fraudulent Transfer Act, specifically N.J.S.A. § 25:2-25(a) and § 25:2-25(b)(2). Section 25:2-25(a) provides that a transfer made by a debtor is fraudulent as to a creditor if the debtor made the transfer

with actual intent to hinder, delay or defraud any creditor of the debtor. Courts have recognized that summary judgment is notoriously inappropriate when intent plays a major role in the determination. Young v. Quinlan, 960 F.2d 351 (3d Cir. 1992). Nonetheless, there is one issue that the Court can dispose of on summary judgment. The movants contend that the payments made to PNC did not constitute property in which the Debtor possessed a sufficient interest for the purposes of fraudulent transfer. The Court disagrees. As the Bankruptcy Appellate Panel in In re Moses cogently explained "if a debtor receives funds from a new creditor to pay its existing debt, the debtor's interest in the funds must be analyzed under § 541 ..." 256 B.R. at 645. Section 541 is extremely broad, and the funds that were disbursed to the Debtor from YNB and deposited into the Debtor's checking account unquestionably come within that broad definition. The Ninth Circuit Court of Appeals has found that a new creditor's unconditional promise to loan a debtor money to pay the debtor's antecedent debt is property in which the debtor holds an interest, as are the proceeds of the loan once it is made. Superior Stamp, 223 F.3d at 1007. *See also*, In re Ludford Fruit, 99 B.R.18, 21 (Bankr. C.D. Cal. 1989) ("Common sense is stretched to the breaking point when a court finds that funds loaned to a debtor, even for the specified purpose of paying an existing creditor, do not become property of the debtor."); David Gray Carlson and William H. Widen, The Earmarking Defense to Voidable Preference Liability: A Reconceptualization, 73 Am. Bankr.L.J. 591 (1999) (questioning how property received by the debtor and transferred to an old creditor is not considered property of the debtor).

Count One alleges that the transfers violated § 548(a)(1)(A) and (B). For the reasons set forth in the analysis of Count Two, the Court finds that summary judgment is not appropriate at this time.

In conclusion, summary judgment is granted in favor of the defendants on Count Three and denied on Counts One and Two.  Defendants should submit new form of order in accordance with this opinion.

*/s/ Kathryn C. Ferguson*
KATHRYN C. FERGUSON
US Bankruptcy Judge